**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

| | |
|---|---|
| DIOP KAMAU, | * |
| | * |
| TYRA RASMUS aka TYRA FERRELL, | * |
| | * |
| and | * |
| | * |
| AMINA KAMAU | * |
| | * |
| Plaintiffs | * |
| | * |
| v | * |
| | * |
| | * |
| | * |
| GREGORY ALAN SLATE, | * |
| | * |
| Individually, | * |
| THERESA BOO JOHNSON, | * |
| | * |
| Individually, GEOFFREY JOHNSON, | * |
| Individually, | * |
| | * |
| JONATHAN JOHNSON, Individually, | * |
| | * |
| and | * |
| | * |
| TYLER JOHNSON, Individually | * |
| | * |
| Defendants | * |
| | * |

CASE NO: 4:11cv522-RH/WCS

## Table of Contents

Index of Exhibits............................................. 4

Complaint.................................................... 7

Introductory Statement....................................... 7

Jurisdiction................................................. 7

Parties...................................................... 9

Factual Allegations......................................... 10

**Count-I** Defamation and Libel per se: Against Defendant Slate and
Defendant Theresa........................................... 28

**Count-II** False Light Invasion of Privacy: Against Defendant
Slate and Defendant Theresa................................. 32

**Count-III** Injurious Falsehood – Trade Libel: Against Defendant
Slate and Defendant Theresa................................. 34

**Count-IV** Interference with Business, Professional reputation and
Goodwill: Against Defendants Slate, Theresa and Geoffrey...... 35

**Count V** § 784.048 of Florida Statute Cyber Harassment and Cyber
Stalking: Against Defendant Slate........................... 38

**Count-VI** § 810.145(3) of Florida Statute Video Voyeurism:
Against Defendant Slate..................................... 40

**Count-VII** § 812.014 of Florida Statute Theft: Against Defendant
Slate....................................................... 42

**Count-VIII** § 784.046(1) (b) of Florida Statute Repeat Violence:
Against Defendant Slate..................................... 44

**Count-IX** § 836.05 of Florida Statute Threats: Against Defendant
Slate....................................................... 47

**Count-X** § 2: Prohibition Of Unfair Or Deceptive Acts Or
Practices Relating To Spyware Of Securely Protect Yourself
Against Cyber Trespass Act, 2008: Against Defendant Slate..... 49

**Count-XI** Aiding and Abetting: Against Defendant Theresa and Geoffrey................................................... 51

**Count-XII** Intentional Infliction of Emotional Distress: Against Defendants Slate, Theresa and Geoffrey........................ 52

**Demand for Jury Trial**........................................ 54

**Certificate of Service**....................................... 55

# Index of Exhibits

Exhibit 1: Audio report by Elizabeth Gaskin

Exhibit 2: Resignation letter of Defendant Slate

Exhibit 3: E-mail from Broward Sherriff Deputy to Emily Apotava.

Exhibit 4: Contract from Defendant Slate to Plaintiff Kamau and Ferrell.

Exhibit 5: E-mail from Defendant Slate to Plaintiff Kamau.

Exhibit 6: An electronic record of the telephone conversation between Defendant Slate and Plaintiff Ferrell

Exhibit 7: Screenshots of the website containing defamatory content.

Exhibit 8: An audio file recording of the conversation between Plaintiff Kamau and a technician at elite web.

Exhibit 9: Letter addressed to Defendant Geoffrey from Attorney Kurt Barch.

Exhibit 10: False case report against the Plaintiffs with the Leon County Sherriff's Office.

Exhibit 11: A copy of the complaints from various aggrieved parties affected by Defendant Slate.

Exhibit 12: A copy of the news report and blogs posted by Defendant Slate.

Exhibit 13: Restraining order filed by Defendant Slate against Plaintiff Kamau.

Exhibit 14: Motion for a continuance telephone filed by Plaintiff Kamau.

Exhibit 15: Final Restraining Order issued by Superior Court of District of Columbia.

Exhibit 16: Protective order dated February 17, 2011 filed by ABC Inc.

Exhibit 17: ABC. Inc. Lawsuit

Exhibit 18: A copy of smear e-mail intimated to Plaintiff Kamau by Plaintiff's old client Julia Dizmang

Exhibit 19: Defendant Jonathan agreeing to remove the website www.diopkamau.com

Exhibit 20: Screenshot of Plaintiff Kamau's email account showcasing the time of an attack.

Exhibit 21: A copy of the complaint e-mailed to Robert H. Waller

Exhibit 22: Letters addressed to internet host.

Exhibit 23: A copy of Leon County Sherrif's report (08-155136)

Exhibit 24: A copy of the filed motion to certify the CPO by Defendant Slate against Plaintiff Ferrell.

Exhibit 25: A copy of the first amended petition to CPO by Defendant Slate against Plaintiff Ferrell.

Exhibit 26: A copy of the second amended petition to CPO by Defendant Slate against Plaintiff Ferrell.

Exhibit 27: A copy of the civil protection order issued against Plaintiff Ferrell.

Exhibit 28: A copy of complaint made to Office of Bar Counsel, The Board on Professional Responsibility, District of Columbia.

Exhibit 29: A copy of complaint made to Attorney General Eric Holder, U.S Department of Justice, Washington D.C.

Exhibit 30: A copy of Motion to Adjudicate Criminal Contempt filed by Defendant Slate against Plaintiff Ferrell.

Exhibit 31: A copy of letter addressed to Inspector General Stupar at Inspector General's office, District of Columbia.

Exhibit 32: A copy of the motion dismiss for bad faith conduct of litigation filed by ABC. Inc., against Defendant Slate.

Exhibit 33: A copy of the charge sheet filed against Defendant Slate.

1

2

### Complaint

3

4

NOW COMES, PLAINTIFFS DIOP KAMAU, TYRA RASMUS aka TYRA FERRELL
and AMINA KAMU (minor)  jointly pro se, sue DEFENDANT GREGORY

5

ALAN SLATE, individually, DEFENDANT THERESA BOO JOHNSON,

6

individually, DEFENDANT GEOFFREY JOHNSON, individually, JOHNSON

7

GREG SLATE, individually, and TYLER JOHNSON, individually and
hereby allege as follows:

8

9

### Introductory Statement

10

11

Pursuant to Rule 3, 17, 38, and 39 of the Federal Rules of Civil

12

Procedure Code, Plaintiffs brings this action against Defendants
alleging Defendant GREGORY ALAN SLATE unlawfully engaged in

13

cyber stalking and cyber harassment, video voyeurism, theft,

14

repeat violence and cyber trespass. Plaintiffs bring this action

15

against Defendants GREGORY ALAN SLATE and THERESA BOO JOHNSON

16

for defamation and libel *per se,* false light invasion of privacy

17

and injurious falsehood. Plaintiffs bring this action against

18

Defendants THERESA BOO JOHNSON, GEOFFREY JOHNSON, JOHNSON GREG

19

SLATE and TYLER JOHNSON for aiding and abetting. Plaintiffs

20

bring this action against all the Defendants for interference
with business, professional reputation and goodwill and

21

intentional infliction of emotional distress.

22

23

### Jurisdiction

24

25

1. This cause of action is brought pursuant to § 784.048 Cyber

26

   Harassment and Cyber Stalking, § 810.145(3) Video Voyeurism,

27

   § 812.014 Theft, § 836.05 Threats, § 2 of the Securely

28

Protect Yourself Against Cyber Trespass Act, 2008, and the laws of the State of Florida.

2. This cause of action is also brought pursuant § 784.046(2) Florida Statute for "an injunction for protection against repeat violence."

3. The issue in controversy involves a dispute between parties who are resident in different states of the United States.

4. Venue is proper in this district pursuant to 28 U.S.C § 1391(b) because Plaintiff resides in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

5. Defendants entered into the state of Florida to commit a tortious act. Defendants are residents of Baltimore, Maryland who committed a tortuous act of cyber defamation in Florida by use of "World Wide Web" (www) against the Plaintiffs by posting on their internet web page, write-ups, inappropriate photographs and videos of the Plaintiffs. Defendants further emailed Plaintiffs' clients defamatory statements about the Plaintiffs. "A non-resident defendant commits the tortious act of defamation in Florida for purposes of Florida's long-arm statute when the non-resident makes allegedly defamatory statements about a Florida resident by posting those statements on a website, provided that the website posts containing the statements are accessible in Florida and accessed in Florida." (*Internet Solutions Corp. v. Marshall,* 39 So.3d 1201 (Fla. 2010)).

6. Defendants should have known that their repeated defamatory statements would subject them to litigation in this Court's jurisdiction.

7. Thus both venue and jurisdiction is appropriate in the United States District Court for the Northern District of

Florida Tallahassee Division and under § 48.193(1) (b) This Court has jurisdiction over the subject matter and parties of this action.

### Parties

8. At all material times hereto, Plaintiff Diop Kamau (hereinafter Plaintiff Kamau), an individual, a U.S citizen and resident in Florida, is documentary film producer and investigative reporter for ABC Corp. news division located at 9271, Hampton Glen Court, Tallahassee, Florida 32312.

9. At all material times hereto, Plaintiff, Tyra Rasmus aka Tyra Ferrell (hereinafter Plaintiff Ferrell), an individual, a U.S citizen and resident in Florida, is a professional film actress located at 9271, Hampton Glen Court, Tallahassee, Florida 32312.

10.    At all material times hereto, Plaintiff Amina Kamau (hereinafter Plaintiff Amina), an individual, a U.S citizen and resident in Florida, is a minor aged about eight years old, located at 9271, Hampton Glen Court, Tallahassee, Florida 32312.

11.    Plaintiffs Kamau and Ferrell are husband and wife and Plaintiff Amina is their eight year old daughter.

12.    At all material times hereto, Defendant Gregory Alan Slate (hereinafter Defendant Slate), an individual, a U.S citizen and resident of D.C is located at 1708 Kilbourne PI, NW Washington D.C 20010.

13.    At all material times hereto, Defendant Theresa Boo Johnson (hereinafter Defendant Theresa), an individual, a U.S citizen and resident of Maryland , is the mother of Defendant Gregory Alan Slate located at 1832 W. Fayette Street, Baltimore, Maryland 21223.

14.   At all material times hereto, Defendant Geoffrey Johnson (herein after Defendant Geoffrey), an individual, a U.S citizen and resident of Maryland is the step father of Defendant Slate located at 1832 W. Fayette Street, Baltimore, Maryland 21223.

15.   At all material times hereto, Defendant Jonathan Johnson (herein after Defendant Jonathan), an individual, a U.S citizen and resident of Maryland is the step brother of Defendant Slate located at 1832 W. Fayette Street, Baltimore, Maryland 21223.

16.   At all material times hereto, Defendant Tyler Johnson (herein after Defendant Tyler), an individual, a U.S citizen and resident of Maryland is the step brother of Defendant Slate located at 1832 W. Fayette Street, Baltimore, Maryland 21223.

17.   Plaintiffs sue Defendants in their individual capacities.

## **Factual Allegations**

18.   Plaintiff Kamau is an American Civil Rights activist, a retired police detective and an investigative news producer for ABC Corp. news division. He is the owner of a website called www.policeabuse.com. He also produces documentary films pertaining to police encounters using hidden cameras for investigation. Investigation involves documenting criminal acts by police officers under color of law and testing customer service responses by law enforcement agencies and racial profiling across United States for national media news channels. He has won four Emmy awards for his work in investigative reporting.

19.     Approximately through the years 2000 to 2007, Defendant Slate worked for Plaintiffs Kamau and Ferrell as a volunteer in the nonprofit organization owned and founded by Plaintiff Kamau called the "Police Complaint Center".

20.     One of the cases Defendant Slate worked on involved a video footage which Plaintiff Kamau produced for American Broadcasting Company INC., (ABC Inc.). Defendant Slate was sent to Chicago to gather footage for the story. He worked on this story under a Voluntary Agreement which stated that he was not entitled for the copyright of that video footage. The story was aired by ABC news channel in May 2007.

21.     During the last two years of Defendant Slate's service in the organization, Plaintiffs Kamau and Ferrell began to receive a number of complaints from their clients against Defendant Slate. The clients reported abusive conduct, rude behavior and threats made by Defendant Slate towards them.

22.     Plaintiffs Kamau and Ferrell tried counseling Defendant Slate on several occasions for his behavior, however, counseling did not appear to have any impact on him.

23.     A client named Elizabeth Gaskins from Illinois reported that Defendant Slate stole an amount of Seven Thousand Five Hundred Dollars ($ 7500) from her on November 7, 2007. Defendant Slate visited Elizabeth to tape a video based on her complaint of police misconduct. A copy of the audio report is attached herewith as Exhibit 1.

24.     When Defendant Slate was confronted by the Plaintiffs regarding this incident, he resigned from Police Complaint Center on November 13, 2007. A copy of the resignation letter is attached herewith as Exhibit 2.

25.    Defendant Slate however, contacted Plaintiffs soon after with a report of police misconduct from a Broward Sheriff Deputy. The report stated that the Sheriff emailed Defendant Slate's girl friend Emily Apotav for sexual favors using a Police Department e-mail account. Slate said the Deputy sent a photo of his penis. To Plaintiffs' surprise, the email addressed to Emily Apotav did not have any logo or identity of Broward Sheriff's Office in the e-mail transmitted from their Office. A copy of the penis photo allegedly contained in the email is attached as Exhibit 3.

26.    To verify this, Plaintiff Kamau contacted Maj. John Carroll of the Broward Sheriff's office regarding the allegation against the Broward Sheriff Deputy. At this time, Plaintiffs to their shock and dismay found out that Defendant Slate was lying and had fabricated the report since no such email was sent using the Police Department e-mail account. The Sheriff's office verified this by checking all the email records sent from their server and no emails were ever sent to Defendant Slate's girl friend Emily Apotav.

27.    Defendant Slate was angry at being scrutinized and used the false news report against the Broward Sheriff Deputy to threaten and tried to force the Plaintiffs to enter into a contract with him wherein he demanded almost half of the company's revenue along with a clause that he could never be fired. A copy of the contract is attached herewith as Exhibit 4.

28.    In an email dated November 16, 2007, Defendant Slate threatened Plaintiff Kamau about airing the video. He stated in the mail "hahaha how about that contract now". A copy of the e-mail is attached herewith as Exhibit 5.   When

Plaintiffs' Kamau and Ferrell refused to sign and agree to these terms he threatened them that he had contacted a news channel to air the story and that he would go ahead and air the story if the Plaintiffs' Kamau and Ferrell did not agree and sign the agreement. Defendant Slate also mentioned in the e-mail that he had every right to freelance and sell the story on Broward Sherriff Deputy to any news channel as he was on his own.

29.  Plaintiff Ferrell confronted Defendant Slate by a recorded telephone call in the month of November 2007. An electronic record of the telephone conversation is attached herewith as Exhibit 6.

30.  After Defendant Slate's resignation with Plaintiff Kamau's organization, Defendant Slate sent a letter to ABC Inc. titled, "Withdrawal of License," claiming ownership of all footage recorded by him, purporting to withdraw any license for it, and demanding that ABC News pay him an unspecified amount to use any of it.

31.  ABC News declined and aired approximately 40 seconds of footage in a 20/20 newsmagazine story broadcast on May 16, 2008.

32.  Defendant Slate at this time began to repeatedly attack Plaintiffs Kamau's and Ferrell's business. He hacked into their computer, email accounts and tarnished their identity by publishing defamatory and libelous stories with reckless disregard for the truth of such stories.

33.  Plaintiffs' Kamau and Ferrell believe that the attacks on them stemmed from Slate's intention to destroy their reputation as they would be key witnesses in the lawsuit that Slate intended to file against ABC Inc.

34.  Defendant Slate also sent several smear emails. He hacked into the Plaintiffs Kamau's and Ferrell's email

accounts to obtain information on new clients and existing clients.

35.    In April 2008 Defendant Slate purchased the domain name www.diopKamau.com which is Plaintiff Kamau's name. The website was registered in Defendant Geoffrey's name.

36.    In the website, Defendants uploaded defamatory content that abused Plaintiffs and which questioned their credibility. The website contained defamatory and libelous content about Plaintiffs. Inappropriate photographs and videos of Plaintiff Ferrell and Plaintiff Amina were posted on the website by the Defendants. Screenshots of the website is attached herewith as Exhibit 7.

37.    By purchasing the domain name www.diopKamau.com, the Defendants intended that when consumers search for Plaintiff Kamau's professional services on the Internet by using Plaintiff Kamau's name, they would be directed to Defendants' website www.diopKamau.com by the search engine. Once the consumers are on Defendants' website, they would be subjected to the defamatory and libelous articles published by Defendants about Plaintiffs.

38.    Plaintiffs' Kamau and Ferrell had engaged a marketing company named "Elite Web" to market their business. The company informed Plaintiffs that their online business marketing account was hacked into by Defendant Slate in May 2008. Defendant Slate hacked into the account and stole email addresses of Plaintiffs Kamau's and Ferrell's clients, business contacts and customer information. An audio file recording of the conversation between Plaintiff Kamau with a technician of "Elite Web" is attached as Exhibit 8.

39.   Defendant Slate then proceeded to send smear emails to Plaintiffs Kamau's and Ferrell's client list that he obtained by this illegal act.

40.   The subject of the emails sent to Plaintiffs Kamau's and Ferrell's clients stated "fraud and Diop Kamau.com". Several clients were alarmed by this and contacted the Plaintiffs about the acts while other clients withdrew their contracts with Plaintiff Kamau.

41.   At that time, Plaintiff Kamau was under contract with various police departments in the United States. When the smear mail reached the departments, the contracts were cancelled.

42.   On July 3, 2008, Defendant Slate released another smear email attack against Plaintiff Kamau personally. He emailed all of Plaintiff Kamau's colleagues at the Florida State University and Florida A and M University with false defamatory statements trying to destroy Plaintiff Kamau's image. Plaintiff Kamau served as a professor in the two universities.   On August 22, 2008 on behalf of Plaintiffs, Attorney Kurt Barch e-mailed Defendant Geoffrey requesting him to immediately remove scandalous videos posted on 'youtube' about Plaintiffs. A copy of the letter is attached herewith as Exhibit 9.

43.   On February 2, 2009 Defendant Slate filed a false charge case (Case No- 09-039667) against Plaintiffs Kamau and Ferrell in Leon County, Sheriff's office. He accused them with Fraud and forgery of a court document "Complaint for Confessed Judgment".

44.   Officer Robert H. Waller of Leon County Sheriff's office was assigned to investigate this case.

45.   Plaintiffs Kamau and Ferrell submitted a list of Exhibits to prove their case to the Sheriff's office.

Robert H. Waller in his report dated April 21, 2009 stated that "this case be closed as "Exceptionally Cleared as of the time of this report, as there is no supporting evidence to prove beyond a reasonable doubt that the named suspects, "Kamau and Tyra Ferrell Jackson falsely made, altered, forged or counterfeited a public record or a certificate, bill of exchange or promissory note or an order, acquittance or discharge for money or other property with intent to injure or defraud any person." A copy of the case report is attached herewith as Exhibit 10.

46.    In August 2009, Defendant Slate pretending to be a parent sent smear emails to all the board members of the Plaintiff Amina's middle school "The School of Arts and Sciences" located in Tallahassee Florida where Plaintiff Kamau also served as a board member. In these emails, Defendant Slate falsely accused Plaintiffs of indulging in fraudulent activities.

47.    The spiteful and malicious acts of the Defendants were unbearable that Plaintiffs Kamau and Ferrell decided to expose the Defendants to the public.

48.    Plaintiffs Kamau and Ferrell produced a short video describing various crimes Defendants had committed against them.

49.    Plaintiffs Kamau and Ferrell also hosted a website named "www.GregSlate.tv" for the public to be informed and to protect the public from Defendant Slate's harassment. To Plaintiffs' surprise the website was soon flooded with complaints from across the country by people who had been attacked by Defendant Slate. A copy of the complaints from various aggrieved parties is attached herewith as Exhibit 11.    Additional stories started to pile on the website on August 7, 2009.

50.    Defendant Slate had published a series of smears in the comments section of "New Times" news reports about Plaintiff Kamau and his organization. On August 5, 2009 Defendant Slate posted slanderous comments on Plaintiff Kamau and defaming Plaintiff Ferrell, Plaintiff Kamau's deceased mother and other family members on a blogging site "New Times" as anonymous clients. A copy of the news report and blogs are attached as Exhibit 12.

51.    On August 7, 2009, Defendant Slate filed a restraining order against Plaintiff Kamau in D.C Superior Court alleging that Plaintiff Kamau hired a drug dealer to murder him and his family. Defendant Slate alleged Plaintiff Kamau made phone calls threatening to burn Slate's house down and posted derogatory information about him on the internet

52.    Defendant Slate provided no evidence in support of the charge regarding a threat to his life. However Defendant Slate with the help of Defendants Jonathan and Tyler produced fraudulent testimony and evidence. This charge was a means to create a sense of urgency in the court. A copy of the filed restraining order is attached herewith as Exhibit 13.

53.    Plaintiff Kamau appeared for the hearing over the telephone as he lives in Florida. The order was granted on October 6, 2010. At the hearing Defendant Slate implied that the webpage caused him fear for his life. He also claimed that the website was dangerous and needed to be removed. A copy of a motion for a continuance telephone hearing dated October 5, 2010 is attached herewith as Exhibit 14. On October 8, 2010 Defendant Slate filed a motion to vacate the motion for continuance telephone hearing. However the motion to vacate the motion for continuance telephone hearing was dismissed. Defendant

Slate made Defendant Tyler and Defendant Jonathan provide false testimony and evidence to the court.

54.   At the initial magistrate hearing, Judge Curtis Von Kaan refused to grant Defendant Slate a restraining order.

55.   However on November 18, 2009 a second Judge Anita Josey Herring sitting in place of Judge Curtis Von Kaan granted a mutual restraining order stating that both parties should not have any contact with one another. At the time of granting the restraining order the Judge neither took any testimony nor interviewed any witnesses. A copy of the restraining order is attached herewith as Exhibit 15. Judge Anita Josey-Herring, overseeing both cases, observed recently that "it appears to me there is a possibility that you all are misusing the internet and it seems to me that it's a matter of a criminal nature . . ." ("And I just don't know that it is appropriate, even with the First Amendment rights, for the internet to be used to harass and intimidate in the way, at least, that it's alleged by the parties involved.").

56.   While the restraining order was in effect, Plaintiff Kamau discovered through an online search that Defendant Slate had initiated a contempt of court proceeding in the court room of Judge Anita Herring in D.C Superior Court without notifying him.

57.   Both in the restraining order and contempt of court fling, Plaintiff Kamau's home address was wrongly addressed as 1220 Oh.St. NW. Suite 100-164 Washington DC 20005 Plaintiff Kamau had never resided at this address. This address however was an address which Defendant Slate had used for several years for personal business.

58.   Plaintiffs Kamau and Ferrell finally decided to file a lawsuit against Defendant Slate for all the harassment and

defamation committed against them. Since they stay several miles away from Defendant Slate, they engaged a private investigator named Greg Miller to visit Defendant Slate's house at Baltimore to verify his residence address for the purpose of a civil lawsuit. Greg Miller visited Defendant Slate to verify his address. Greg Miller will testify that he never came within ten feet of Defendant Slate, however, Defendant Slate made a hue and cry alleging that Greg Miller attacked him.

59.    Greg Miller was arrested by the police on the report lodged by Defendant Slate. Defendants Slate and Theresa filed an insurance claim against Greg Miller. The Plaintiffs were now prevented from filing the lawsuit against Defendant Slate at this time.

60.    On August 16, 2009, Defendant Slate filed a copyright infringement lawsuit against ABC Inc. (Civil Action No. 09-1761 (BAH)) He claimed in the lawsuit that he independently worked on the video footage and that the agreement with ABC was fraudulent, baseless and also that ABC news channel owed him an amount of $100,000.

61.    During the litigation process, Defendant Slate's Attorney David Ludwig discovered that Defendant Slate had fabricated e-mails and used fraudulent methods to obtain a verdict in his favor in this case. Attorney David Ludwig withdrew as Defendant Slate's Attorney at this time and Defendant Slate continued the case pro se.

62.    ABC in a motion for a Protective Order and Statement Concerning Discovery filed with the Court stated, "It is troubled by the fact that Slate has now twice sued to try to legally restrain Kamau just before commencing litigation against ABC, given Kamau's status as a likely witness." A

copy of the Protective order dated February 17, 2011 is attached herewith as Exhibit 16.

63.    *Gregory Slate* v. *American Broadcasting Company INC.,* litigation is still proceeding in the District Court of Columbia, Case No. 1:09-cv-01761-EGS. A copy of the lawsuit is attached herewith as Exhibit 17.

64.    To work on a settlement with ABC Inc., Defendant Slate continuously harassed the Plaintiffs and ABC Inc.

65.    Ever since Defendant Slate emailed Plaintiffs Kamau's and Ferrell's clients, Plaintiff Kamau has not trained a single police officer.

66.    Plaintiff Kamau's business has been completely destroyed due to the various malicious acts of Defendant Slate.

67.    Prior to the acts of Defendant Slate, Plaintiff Kamau was training several hundred officers a year and was earning approximately an amount in between $ 25,000 to $ 50,000 a year. To Plaintiff Kamau's credit, he had trained officers of the Florida Highway Patrol, the Broward County Sheriff's office, the Collier County Sheriff's office, the Tallahassee Police Department and others.

68.    Two contracts which were negotiated with Florida Highway Patrol and Broward Sheriff's office were abruptly terminated because of the smear emails sent by Defendant Slate.

69.    Defendant Theresa and Defendant Geoffrey assisted Defendant Slate in his attacks against Plaintiffs. Defendant Geoffrey assisted Defendant Slate with creating and registering the website www.diopKamau.com. On July 6, 2008, an old client of Plaintiff Kamau by name Julia Dizmang (formerly Bramlett) informed Plaintiff Kamau by e-mail about a smear e-mail which he received from Defendant

Geoffrey with subject "FSU News alert". A copy of the e-mail is attached herewith as Exhibit 18. Defendant Jonathan through the website www.GoDaddy.com agreed to the demands of Plaintiff Kamau to have the website www.diopkamau.com removed. A copy of the internet record is attached herewith as Exhibit 19.

70.   Defendant Theresa had contacted Collier Sheriff's office, Broward Sheriff's office and others requesting information regarding the amount of training payments received by them and all the e-mail addresses of the officers in the agencies. This act was executed by Defendant Theresa because Defendant Slate intended to send smear e-mails to all of the deputies who attended Plaintiff Kamau's training. She also contacted the Tallahassee Democrat newspaper and other South Florida papers leaking disparaging stories about the Plaintiffs.

71.   Many news organizations contacted the Sheriff at the Broward Sheriff's office enquiring why his office was doing business with Plaintiff Kamau in spite of having received Defendant Slate's information.

72.   The Sheriff of Broward Sheriff's office knew Plaintiff Kamau personally and respected him. He warned Plaintiff Kamau of such news and acts executed by the Defendants.

73.   A news director for Fox news in Milwaukee by name Brian Policyn informed Plaintiff Kamau that he had received a smear package from Defendant Slate. The emails contained a restraining order filed by a former volunteer of Plaintiffs Kamau's and Ferrell's organization named Paul Parker against Plaintiff Kamau. The restraining order had been dismissed by the judge a long time ago.

74.   Defendant Slate used the restraining order to portray to Plaintiffs Kamau's and Ferrell's clients that Plaintiffs have been engaging in criminal conduct.

75.   In addition to hacking and cyber stalking, Plaintiffs Kamau and Ferrell found out that Defendant Slate repeatedly logged in online as a volunteer in the Plaintiffs' organization under a fictitious name. Plaintiffs Kamau and Ferrell believe that he did this with the intent to obtain information about their business activities. Defendant Slate accessed and obtained this information through an online operating system called webex. The operating system webex access is provided only to members of the organization.

76.   Plaintiffs Kamau and Ferrell became aware of this when Defendant Slate discovered a critical case which Plaintiff Kamau was working on. It was a civil rights violation case in the Lorain Ohio police department. Two police officers had approached Plaintiff Kamau to investigate the alleged violation. The officers who were under investigation were kept confidential until Defendant Slate stole this information and exposed the officers' identities on a web blog. Plaintiff discovered this when Defendant Slate took a screenshot of the confidential case by logging onto operating system called webex. This access is granted only to volunteers enrolled. He further proceeded to send emails to the police chief revealing the source of the information. Plaintiff Kamau's reputation, credibility and goodwill were damaged beyond recognition.

77.   Defendant Slate on May 14, 2008 burglarized Plaintiffs' home and destroyed personal family photographs, stole business records, a substantial amount of copyrighted film materials and also destroyed a few important

copyrighted film materials. Plaintiffs Kamau and Ferrell believe the thief to be Defendant Slate because he used the data collected in his internet smear email attacks. Plaintiffs Kamau and Ferrell discovered this when the IP break-in-log on Plaintiff Kamau's email account after Defendant Slate entered their house and destroyed files was Wednesday 14, May 2008, time 08:26:41 AM EDT from IP address 207.145.249.154. A screenshot of Plaintiff Kamau's email account showcasing the time of the attack is attached as Exhibit 20. Plaintiffs Kamau and Ferrell reported about this attack to Officer Robert H. Waller of Leon County Sheriff's Office. A copy of the complaint e-mailed to Robert H. Waller is attached as Exhibit 21.

78.    Plaintiffs Kamau and Ferrell struggled to fight all the smear email attacks on them. Plaintiff Kamau has written more than forty odd letters to the internet hosts requesting them to remove all the stolen content that Defendant Slate posted on the internet. A copy of letters addressed to the internet host is attached herewith as Exhibit 22.  As soon as the internet host removed all the defamatory and stolen web content, Defendant Slate moved it to another internet host.

79.    Plaintiffs Kamau and Ferrell also discovered from the internet host that Defendant Slate had been uploading inappropriate photographs of Plaintiff Amina on the internet and emailing them to her middle school using various computers, friends and acquaintance residences and internet cafes to upload the images.

80.    Since the acts of Defendant Slate along with Defendants Theresa and Geoffrey were intolerable, Plaintiffs Kamau and Ferrell filed a series of complaints with Leon County Sheriff's office, Cyber crime unit

Approximately May 2009. The cyber crime unit served a search warrant on Defendant Slate's internet hosting company "Hostdime" and "GoDaddy.com". The unit also issued subpoena order against Defendants to search for IP addresses in Defendant Slate's internet accounts. A copy of Leon County Sherrif's report (08-155136) is attached herewith as Exhibit 23.

81.     On June 10, 2010 Plaintiff Ferrell on driving Plaintiff Amina back from the bus stop, met with a traffic collision as she was being followed by a process server sent by Defendant Slate and was scared and intimidated.

82.     Defendant Slate took the existing restraining order against Plaintiff Kamau and a false story about Greg Miller to a local D.C prosecutor named Sarah Connell a.k.a. Sarah Jewell.

83.     Sarah Connell believed Defendant Slate's false stories and filed a petition for civil protection order against Plaintiff Ferrell dated November 23, 2010.A copy of the filed petition for the civil protection order is attached herewith as Exhibit 24. Defendant Slate also filed a an amendment to the CPO on December 8, 2010 and a second amended petition and affidavit on February 9, 2011 with the Superior Court of the District of Columbia, Domestic Violence Unit. A copy of the first and second amended petition is attached herewith as Exhibit 25 and 26.

84.     The petition for the civil protection order was based on Defendant Slate's claim that Plaintiff Ferrell was stalking him.

85.     Plaintiff Ferrell had not communicated with Defendant Slate in the past four years and Plaintiff lived several hundred miles away in Tallahassee Florida.

86.   Plaintiffs Kamau and Ferrell were poorly served by their attorney Tim Clinton who was inexperienced in handling civil protection orders and advised Plaintiff Ferrell to acquiesce to a civil protection order not admitting liability.

87.   Plaintiff Ferrell did not wish to do this as she felt that she had done nothing wrong and it was within Plaintiffs first amendment rights to publish truthful news reports.

88.   In the Courtroom, Attorney Sarah Connell insisted that Plaintiff Ferrell sign autographs for the public in the court which Plaintiff Ferrell refused. At this time, Attorney Sarah Connell ordered Attorney Tim Clinton to convey a message to Plaintiff Ferrell that she would not be happy if Plaintiff Ferrell did not sign those autographs. Plaintiff Ferrell felt scared and intimidated by the prosecutor Sarah Connell that she unknowingly acquiesced to the civil protection order not admitting liability. This decision of Plaintiff Ferrell was a direct result of prosecutorial misconduct and intimidation by Attorney Sarah Connell.

89.   The civil protection order was passed on Aril 13, 2011 ordering Plaintiff Ferrell to remove all content posted against Defendant Slate on the internet. A copy of the civil protection order is attached herewith as Exhibit 27.

90.   Plaintiff Ferrell removed all the sites identified by Defendant Slate in accordance with the civil protection order.

91.   Plaintiff Ferrell filed a complaint against Attorney Sarah Connell and Tim Clinton with "Office of Bar Counsel, The Board on Professional Responsibility, District of Columbia dated May 3, 2011 with regard to the attorneys' misconduct and intimidation tactics. A copy of the

complaint is attached herewith as Exhibit 28.  There was no action taken.

92.   Plaintiff Kamau and Ferrell also filed a complaint with Attorney General Eric Holder, U.S Department of Justice, Washington D.C with regard to the attorneys' misconduct and intimidation tactics. A copy of the complaint is attached herewith as Exhibit 29. There was no action taken.

93.   A few weeks after the civil protection order was entered, Plaintiffs Kamau and Ferrell received a notification from their former Attorney Tim Clinton stating that Defendant Slate had filed a fresh contempt petition alleging that new websites had been discovered. Petitioner filed a Motion to Adjudicate Criminal Contempt on May 9, 2011 alleging that respondent is in violation of the civil protection order. A copy of the motion is attached herewith as Exhibit 30.

94.   On June 15, 2011 Plaintiff Kamau continued Defendant Slate's matter with Inspector General Stupar at Inspector General's office, District of Columbia since he could not take any action on Defendant Slate because of the restraining order and civil protection order. He was forced to contact the inspector general because Defendant Slate continued his attacks on Plaintiffs in spite of the mutual restraining order. A copy of the letter is attached herewith as Exhibit 31.

95.   Defendant Slate attacked Plaintiff Kamau again in the DC Superior Court. He had obtained a warrant for Plaintiff Kamau's arrest. He mailed court documents to an address where Plaintiffs Kamau and Ferrell never resided at1220 L. Street Northwest Washington DC 20005. He had fabricated

false stories about Plaintiff Kamau to obtain the arrest warrant.

96.    All the stories fabricated by Defendant Slate were fraudulent, baseless and had never been subject to scrutiny by the District Court and Superior Court of Columbia.

97.    On September 2, 2011 ABC Inc., had filed a motion to dismiss for bad faith conduct of litigation with the D.C district Court alleging the various crimes Defendant Slate had committed. A copy of the motion is attached herewith as Exhibit 32.

98.    Defendant Slate's last attack on Plaintiffs Kamau and Ferrell was between July 30, 2011 and September 30, 2011. He hacked into their online BB&T bank account and had changed the email addresses to a former address he had in their organization called gslate@policeabuse.org.

99.    Apart from changing the email address, he had also hacked into Plaintiffs Kamau's and Ferrell's email account. Plaintiffs Kamau and Ferrell discovered this when they received emails from two of their clients complaining about the Plaintiffs' services. When Plaintiffs Kamau and Ferrell contacted the two clients, they claimed that they had not emailed them.

100.    Plaintiff in this complaint also submits Exhibit 33, which will give this Honorable Court details wherein Defendant Slate was booked by Madison County Jail, Florida for non-cooperation with the Madison County Traffic Police. A copy of the charge sheet is attached herewith as Exhibit 33.

101.    The damage and harm caused to Plaintiffs Kamau's and Ferrell's business and reputation are irreparable. All attacks on Plaintiffs and particularly on Plaintiff Ferrell have caused her permanent damage wherein she has been

prevented from returning to her career as an actor for the last five years now. Also, there was a project of developing Plaintiff Kamau's life story as a movie project prior to Defendant Slate initiating smear e-mail attack on the Plaintiffs. The project was shelved after Defendant Slate released a smear e-mail campaign against the Plaintiffs. Although Plaintiffs Kamau and Ferrell laid the project back in development, Defendant Slate issued a CPO against Plaintiff Ferrell causing severe loss of time and amount to Plaintiffs Kamau and Ferrell. Defendants' criminal malicious acts have amounted to cyber harassment, cyber stalking, video voyeurism, theft, defamation and libel *per se,* false light invasion of privacy, injurious falsehood, threats, cyber trespass, interference with business, professional reputation and goodwill, aiding and abetting and intentional infliction of emotional distress.

102.   Plaintiffs have no adequate remedy at law.

### Count-I
### Defamation and Libel per se: Against
### Defendant Slate and Defendant Theresa

103.   Plaintiffs repeat and allege from paragraph 1 to 102 with the same force and effect, as if fully set forth below.

104.   This cause of action is brought by Plaintiffs against Defendants Slate and Theresa for defamation and libel per se.

105.   Statements are defamatory per se where they falsely impute to the Plaintiff an "Allegations or imputations "injurious to another in their trade, business, or

profession" and "Allegations or imputations of criminal activity (sometimes only crimes of moral turpitude)"

106.   Florida state law specifically mentions online defamation as a chargeable offense. In *Internet Solutions Corp.* v. *Tabitha Marshall* (SC09-272) **the** Florida Supreme Court has stated that "online defamers can be liable in any state in which their content is accessible online even absent any specific efforts to target that jurisdiction because, by posting content online, the poster intends for it to be accessible everywhere."

107.   According to Florida law it amounts to defamation when "the defendant published a false statement about the plaintiff to a third party and the falsity of the statement caused injury to the plaintiff."

108.   Plaintiffs allege that Defendant Slate had posted in the website "www.diopKamau.com" false defamatory content against Plaintiff Ferrell and Plaintiff Amina.

109.   Plaintiffs Kamau and Ferrell allege that Defendant Theresa had contacted Collier Sheriff's office, Broward Sheriff's office and others requesting information regarding the amount of training payments received by them and all the e-mail addresses of the officers in the agencies. . This act was executed by Defendant Theresa because Defendant Slate intended to send smear e-mails to all of the deputies who attended Plaintiff Kamau's training. She had also contacted the Tallahassee Democrat newspaper and other South Florida papers leaking disparaging false stories about Plaintiffs Kamau and Ferrell.

110.   Defendants made false statements about Plaintiffs Kamau and Ferrell which are per se injurious as they accuse them of criminal misconduct and criminal activity.

111. The nature of the false statements is such that malice and actual damage are presumed because Defendants have alleged criminal conduct by Plaintiffs Kamau and Ferrell.

112. Defendants published false statements to third parties via posting the statements on the worldwide internet.

113. Defendants published false statements to Plaintiff Kamau's clients and colleagues resident in Florida and outside via email. Each and every one of Defendants' statements, implications and meanings alleged above is false.

114. Each and every one of Defendants' statements, implications and meanings alleged above is libelous per se.

115. At the time of Defendants' publications of these false and defamatory statements, implications and meanings, Defendants' knew the facts described above, and knew (or recklessly disregarded the facts) that the Plaintiffs did not defraud or harm anyone.

116. Thus, Defendants made their false and defamatory statements, innuendos, implications, meanings and accusations against Plaintiffs and their business with the knowledge of their falsity or with reckless disregard as to their truth or falsity.

117. Defendants' statements have, at all times material hereto, been directed and continue to be directed to citizens of the State of Florida.

118. The falsity of these statements injured Plaintiffs Kamau's and Ferrell's reputation in the business community.

119. As a direct and proximate result of Defendants' false and defamatory Plaintiffs have suffered actual and consequential damages, including but not limited to damages to its reputation. The amount of such damages is currently unknown but will be proven at trial.

120.   Defendants' false and defamatory campaign was intentional and was committed wilfully, maliciously, with fraud, oppression or malice, and in conscious disregard of the Plaintiffs' rights. As a result, in addition to its actual damages, Plaintiffs are entitled to exemplary damages in an amount as a jury may find necessary to punish Defendants for their malicious and wrongful conduct and to deter Defendants and others similarly situated, from engaging in such wrongful conduct in the future.

WHEREFORE, Plaintiffs prayerfully request that this Honorable Court grant the following relief against Defendants Slate and Theresa:

- Award compensatory damages as this Honorable Court deems just.
- Award judgment for Plaintiffs against Defendants Slate and Theresa, jointly and severely;
- Award Defendants Slate and Theresa with a statutory fine of $500,000.00;
- Award for temporary, preliminary, and permanent injunctive relief to prevent any future defamation against Plaintiffs.
- Award for general damages, according to proof at trial;
- Award for exemplary and punitive damages, according to proof at trial;
- Award for all other damages permitted by law, according to proof at trial;

- Award for all other equitable relief permitted by law, according to proof at trial;
- Award for the cost of the suit.

Award such other and further relief as this Honorable Court deems just.

## Count-II
## False Light Invasion of Privacy: Against Defendant Slate and Defendant Theresa

121.   Plaintiffs repeat and allege from paragraph 1 to 102 with the same force and effect, as if fully set forth below.

122.   This cause of action is brought by Plaintiffs against Defendants Slate and Theresa for false light invasion of privacy.

123.   Plaintiffs allege in that Defendant Slate posted inappropriate content and videos of Plaintiff Ferrell and Plaintiff Amina.

124.   Plaintiffs allege that Defendant Slate posted content about the Plaintiffs published on his website and sent defamatory to their business associates, customers, clients and the general public.

125.   The aforesaid actions and accusations by the Defendants have been publicized and communicated to third persons and the general public by the Defendants with express, reckless, and wanton disregard of the Plaintiffs' right to privacy.

126.   The publicity has unreasonably placed the Plaintiffs in a false light in the public eye.

127.   That by reasons of said invasion of privacy and as a proximate result thereof, Plaintiffs was damaged in actual and punitive damages.

WHEREFORE, Plaintiffs prayerfully request that this Honorable Court grant the following relief against Defendants Slate and Theresa:

- Award compensatory damages as this Honorable Court deems just.
- Award judgment for Plaintiffs against Defendants Slate and Theresa, jointly and severely;
- Award Defendants Slate and Theresa with a statutory fine of $500,000.00;
- Award for temporary, preliminary, and permanent injunctive relief to prevent any future defamation against Plaintiffs.
- Award for general damages, according to proof at trial;
- Award for exemplary and punitive damages, according to proof at trial;
- Award for all other damages permitted by law, according to proof at trial;
- Award for all other equitable relief permitted by law, according to proof at trial;
- Award for the cost of the suit.
- Award such other and further relief as this Honorable Court deems just.

## Count-III
### Injurious Falsehood – Trade Libel: Against Defendant Slate and Defendant Theresa

128.   Plaintiffs Kamau and Ferrell repeat and allege from paragraph 1 to 102 with the same force and effect, as if fully set forth below.

129.   Defendants made false statements about the Plaintiffs business and disparaged the nature and manner by which Plaintiff Kamau conducts business.

130.   Defendants published untrue statements to third parties through posting statements over the worldwide internet.

131.   Defendants sent smear and defamatory emails to Plaintiffs business associates, customers and clients.

132.   Defendants knew that the false statements and smear email campaigns were likely to influence existing and prospective clients to avoid Plaintiffs' business.

133.   The false statements materially and substantially induced third parties not to utilize Plaintiffs' business and not to contract with the Plaintiffs.

134.   As result of the false statements and smear email campaigns, Plaintiffs have suffered pecuniary loss in the form of business contracts and business revenues.

WHEREFORE, Plaintiffs prayerfully request that this Honorable Court grant the following relief against Defendants Slate and Theresa:

- Award compensatory damages as this Honorable Court deems just.

- Award judgment for Plaintiffs against Defendants Slate and Theresa, jointly and severely;
- Award Defendants Slate and Theresa with a statutory fine of $500,000.00;
- Award for temporary, preliminary, and permanent injunctive relief to prevent any future loss to Plaintiffs.
- Award for general damages, according to proof at trial;
- Award for exemplary and punitive damages, according to proof at trial;
- Award for all other damages permitted by law, according to proof at trial;
- Award for all other equitable relief permitted by law, according to proof at trial;
- Award for the cost of the suit.
  Award such other and further relief as this Honorable Court deems just.

### Count-IV
### Interference with Business, Professional reputation and Goodwill: Against Defendants Slate, Theresa and Geoffrey

135.   Plaintiffs Kamau and Ferrell repeat and allege from paragraph 1 to 102 with the same force and effect, as if fully set forth below.

136.   This cause of action is brought by Plaintiffs against Defendants wholly for Interference with Business, Professional reputation and Goodwill of Plaintiffs' business.

137.   Plaintiffs allege that Defendant Slate along with Defendant Theresa and Geoffrey on various instances had interfered with Plaintiffs business, reputation and goodwill.

138.   Plaintiffs had business relationships and contracts with Florida Highway Patrol, Broward County Sheriff's office, Collier County Sheriff's office, Tallahassee Police Department and others.

139.   Plaintiff Kamau alleges in that after Defendant Slate was terminated, he logged into Plaintiffs organization under a fictitious name as a volunteer only to track down on who were Plaintiffs' latest clients and the cases on which Plaintiff Kamau worked on. Plaintiff Kamau alleges in that Defendant Slate exposed a confidential case on civil right violation in Lorain Ohio police department which was kept under wrap by Plaintiff Kamau. This act in particular of Defendant Slate has caused Plaintiff Kamau embarrassment and his reputation, goodwill and credibility were damaged beyond recognition.

140.   Plaintiffs allege that Defendants willfully, intentionally and maliciously interfered with Plaintiffs' business and Plaintiff Kamau lost an important contract which he had negotiated with Florida Highway Patrol and Broward Sheriff's office.

141.   Defendant Theresa had intentionally and maliciously emailed false information about the Plaintiffs to their clients, Collier Sheriff's office, Broward Sheriff's office and others. She had also contacted the Tallahassee Democrat newspaper and other South Florida papers leaking disparaging stories about the Plaintiffs.

142.   As a direct and proximate cause of the reckless, wanton, intended, outrageous, and otherwise tortious acts

of the Defendants wholly; Plaintiffs suffered and are still suffering from irreparable damage to their business, reputation and goodwill and loss of income. The direct and proximate result of interference with business, professional reputation and goodwill has caused the Plaintiffs general and special damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs prayerfully request that this Honorable Court grant the following relief against the Defendants:

- Award compensatory damages as this Honorable Court deems just.
- Award judgment for Plaintiffs against the Defendants, jointly and severely;
- Award Defendants with a statutory fine of $500,000.00;
- Award for temporary, preliminary, and permanent injunctive relief to prevent any future interference with business, professional reputation and goodwill
- Award for general damages, according to proof at trial;
- Award for all other damages permitted by law, according to proof at trial;
- Award for all other equitable relief permitted by law, according to proof at trial;
- Award for the cost of the suit.
- Award such other and further relief as this Honorable Court deems just.

## Count V
## § 784.048 of Florida Statute Cyber Harassment and Cyber Stalking: Against Defendant Slate

143.   Plaintiffs repeat and alleges from paragraph 1 to 102 with the same force and effect, as if fully set forth below.

144.   This cause of action is brought by Plaintiffs against Defendant Slate for cyber harassment and cyber stalking.

145.   In the state of Florida, email harassment or cyber harassment are legally classified as a form of stalking commonly referred to as "cyber stalking." Although Florida does not have a specific law for email harassment, the victims of electronic harassment can find legal protection under Florida Statutes 784.048, which deal with harassment, stalking and related crimes.

146.   § 784.048 (2) states that, any person who willfully, maliciously, and repeatedly follows, harasses, or cyber stalks another person commits the offense of stalking, a misdemeanor of the first degree, punishable as provided in § 775.082 or § 775.083.

147.   § 784.048(1)(d) states that "Cyber stalking consists of engaging in a course of conduct to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose."

148.   Florida law defines harassment as any action that causes a person intentional harm and does not serve a valid purpose.

149.   Plaintiffs allege and that they were victims of cyber harassment in the form of cyber stalking. Plaintiff Kamau alleges that Defendant Slate logged onto webex pretending to be volunteer to obtain information about Plaintiffs' business activities.

150.   Plaintiffs Kamau and Ferrell allege that Defendant Slate hacked into Plaintiffs' email account only to find their clients' email addresses and subsequently hacked into these client's email accounts. Defendant Slate then maliciously and intentionally emailed the Plaintiffs from their client's email accounts complaining about their services, thereby seeking to destroy Plaintiffs' reputation. Plaintiff's clients were contacted and they denied having sent those emails.

151.   Plaintiffs allege that Plaintiff Amina was cyber stalked by Defendant Slate. According to Florida Statutes 784.048 (5) any person who willfully, maliciously, and repeatedly follows, harasses, or cyber stalks a minor under 16 years of age commits the offense of aggravated stalking, a felony of the third degree, punishable as provided in § 775.082, § 775.083, or § 775.084.

152.   As a direct and proximate cause of these malicious, reckless, wanton, intended, outrageous, and otherwise tortious acts of Defendant Slate, Plaintiffs suffered and are still suffering from irreparable damage to their business, reputation and goodwill, loss of income, and mental disturbance.

153.   The direct and proximate result of cyber harassment and cyber stalking has caused the Plaintiffs punitive, general and special damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs prayerfully request that this Honorable Court grant the following relief against Defendant Slate:

- Award compensatory damages as this Honorable Court deems just.
- Award judgment for Plaintiffs against Defendant Slate, jointly and severely;
- Award Defendant Slate with a statutory fine of $500,000.00;
- Award for temporary, preliminary, and permanent injunctive relief to prevent any future cyber stalking and harassment.
- Award for general damages, according to proof at trial;
- Award for exemplary and punitive damages, according to proof at trial;
- Award for all other damages permitted by law, according to proof at trial;
- Award for all other equitable relief permitted by law, according to proof at trial;
- Award for the cost of the suit.
- Award such other and further relief as this Honorable Court deems just.

## Count-VI
### § 810.145(3) of Florida Statute Video Voyeurism: Against Defendant Slate

154.   Plaintiffs repeat and alleges from paragraph 1 to 102 with the same force and effect, as if fully set forth below.

155.   This cause of action is brought by Plaintiffs against Defendant Slate for Video Voyeurism.

156.   § 810.145(3) states that "a person commits the offense of video voyeurism dissemination if that person, knowing or having reason to believe that an image was created in a manner described in this section, intentionally disseminates, distributes, or transfers the image to another person for the purpose of amusement, entertainment, sexual arousal, gratification, or profit, or for the purpose of degrading or abusing another person.

157.   Plaintiffs allege in paragraph 33 that Defendant Slate posted inappropriate videos and photographs of Plaintiff Ferrell and Plaintiff Amina.

158.   Plaintiffs allege that Plaintiff Amina was attacked by the malicious and intentional acts of Defendant Slate. He posted inappropriate photos of her on the internet and emailed the photographs to her school as well. Defendants have attacked an eight year old child which has caused the child severe mental disturbances. Plaintiff Amina had to be treated for the mental and emotional trauma caused by the direct and proximate acts of the Defendants as mentioned above.

159.   As a direct and proximate cause of this cruel, reckless, wanton, intended, outrageous, and otherwise tortious act of Defendant Slate, Plaintiffs suffered and are still suffering from irreparable damage to their business, reputation and goodwill, loss of income and mental disturbance.

160.   The direct and proximate result of video voyeurism has caused the Plaintiffs punitive, general and special damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs prayerfully request that this Honorable Court grant the following relief against Defendant Slate:

- Award compensatory damages as this Honorable Court deems just.
- Award judgment for Plaintiffs against Defendant Slate, jointly and severely;
- Award Defendant Slate with a statutory fine of $500,000.00;
- Award for temporary, preliminary, and permanent injunctive relief to prevent any future video voyeurism.
- Award for general damages, according to proof at trial;
- Award for exemplary and punitive damages, according to proof at trial;
- Award for all other damages permitted by law, according to proof at trial;
- Award for all other equitable relief permitted by law, according to proof at trial;
- Award for the cost of the suit.
- Award such other and further relief as this Honorable Court deems just.

<u>**Count-VII**</u>
<u>**§ 812.014 of Florida Statute Theft: Against Defendant Slate**</u>

161.   Plaintiffs Kamau and Ferrell repeat and allege from paragraph 1 to 102 with the same force and effect, as if fully set forth below.

162. This cause of action is brought by Plaintiffs against Defendant Slate for Theft.

163. § 812.014 states that "a person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit from the property. (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property."

164. Plaintiffs allege that Defendant Slate stole email addresses of clients, business contact and customer information by hacking into their business marketing and email accounts.

165. Plaintiffs allege that Defendant Slate enrolled in Plaintiffs' organization as an volunteer under a fictitious name only to steal business information from Plaintiff Kamau. Plaintiff alleges that Defendant Slate stole a confidential case on civil rights violation by two officers of Lorain Ohio Police Department. Plaintiff discovered this when Defendant Slate took a screenshot of the confidential case by logging onto operating system called webex. This access is granted only to volunteers enrolled. Defendant Slate had also burglarized Plaintiffs home, stole important business records, a substantial amount of copyrighted film materials and destroyed personal family photographs.

166. As a direct and proximate cause of this cruel, reckless, wanton, intended, outrageous, and otherwise tortious acts of Defendant Slate; Plaintiffs suffered and are still suffering from irreparable damage to their business, reputation and goodwill, loss of income, loss of property, and mental disturbance.

167.    The direct and proximate result of theft has caused the Plaintiffs punitive, general and special damages in an amount to be proven at trial.

WHEREFORE,    Plaintiffs    prayerfully    request    that    this Honorable    Court    grant    the    following    relief    against Defendant Slate:

- Award compensatory damages as this Honorable Court deems just.
- Award    judgment    for    Plaintiffs    against Defendant Slate, jointly and severely;
- Award Defendant Slate with a statutory fine of $500,000.00;
- Award    for general    damages,    according    to proof at trial;
- Award for exemplary and punitive damages, according to proof at trial;
- Award    for all    other    damages permitted    by law, according to proof at trial;
- Award    for    all    other    equitable    relief permitted    by    law,    according    to    proof    at trial;
- Award for the cost of the suit.
- Award such other and further relief as this Honorable Court deems just.

## Count-VIII
## § 784.046(1) (b) of Florida Statute Repeat Violence: Against Defendant Slate

168.    Plaintiffs repeat and allege from paragraph 1 to 102 with the same force and effect, as if fully set forth below.

169.    This action is brought by Plaintiffs against Defendant Slate for repeat violence.

170.    § 784.046(1) (b) states that "Repeat violence" is defined as "two incidents of violence or stalking committed by the respondent, one of which must have been within 6 months of the filing of the petition, which are directed against the petitioner or the petitioner's immediate family member."

171.    § 784.046(1)(a) states that "Violence" means "any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, or false imprisonment , or any criminal offense resulting in physical injury or death, by a person against any other person."

172.    § 784.046(1) (a) states that "Stalking" occurs when a person "willfully, maliciously, and repeatedly follows, harasses, or cyber stalks another person."

173.    Plaintiffs respectfully submit to this Honorable court that they have been victims of repeat violence in forms of cyber stalking and harassment. "Cyber stalking" entails harassment by means of electronic communications.

174.    Plaintiffs allege that they had been victimized by repeat violence.

175.    As a direct and proximate cause of repeat violence, Plaintiffs suffered and are still suffering from irreparable damage to their business, reputation and goodwill, loss of income, harassment and mental disturbance.

176.    The direct and proximate result of repeat violence has caused the Plaintiffs punitive, general and special damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs prayerfully request that this Honorable Court grant the following relief against Defendant Slate:

- Award compensatory damages as this Honorable Court deems just.
- Award judgment for Plaintiffs against Defendant Slate, jointly and severely;
- Award Defendant Slate with a statutory fine of $500,000.00;
- Award for temporary, preliminary, and permanent injunctive relief to prevent any future repeat violence.
- Award for general damages, according to proof at trial;
- Award for exemplary and punitive damages, according to proof at trial;
- Award for all other damages permitted by law, according to proof at trial;
- Award for all other equitable relief permitted by law, according to proof at trial;
- Award for the cost of the suit.
- Award such other and further relief as this Honorable Court deems just.

**Count-IX**
**§ 836.05 of Florida Statute Threats: Against Defendant Slate**

177.   Plaintiffs Kamau and Ferrell repeat and allege from paragraph 1 to 102 with the same force and effect, as if fully set forth below.

178.   This cause of action is brought by Plaintiffs against Defendant Slate for threats.

179.   § 836.05 states that "whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in § 775.082, § 775.083, or § 775.084.

180.   Plaintiffs allege that Defendant Slate had fabricated a false news report against a Broward Sheriff Deputy and threatened Plaintiffs to forcefully enter into a contract with him. The contract stated that the Plaintiffs would transfer nearly total control of their business over to him.

181.   As a direct and proximate cause of the reckless, wanton, intended, outrageous, and otherwise tortious acts of Defendant Slate; Plaintiffs suffered and are still

suffering from irreparable damage to their business, reputation and goodwill, loss of income, and mental disturbance.

182.   The direct and proximate result of threat has caused the Plaintiffs punitive, general and special damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs prayerfully request that this Honorable Court grant the following relief against Defendant Slate:

- Award compensatory damages as this Honorable Court deems just.

- Award judgment for Plaintiffs against Defendant Slate, jointly and severely;

- Award Defendant Slate with a statutory fine of $500,000.00;

- Award for temporary, preliminary, and permanent injunctive relief to prevent any future threat against Plaintiffs.

- Award for general damages, according to proof at trial;

- Award for exemplary and punitive damages, according to proof at trial;

- Award for all other damages permitted by law, according to proof at trial;

- Award for all other equitable relief permitted by law, according to proof at trial;

- Award for the cost of the suit.

- Award such other and further relief as this Honorable Court deems just.

**Count-X**
**§ 2: Prohibition Of Unfair Or Deceptive Acts Or Practices**
**Relating To Spyware Of Securely Protect Yourself Against Cyber**
**Trespass Act, 2008: Against Defendant Slate**

183.   Plaintiffs Kamau and Ferrell repeat and allege from paragraph 1 to 102 with the same force and effect, as if fully set forth below.

184.   This cause of action is brought by Plaintiffs against Defendant Slate for prohibition of § 2 and § 3 of the Securely Protect Yourself Against Cyber Trespass Act, 2008.

185.   § 2 (a)(C) states that "it is unlawful for any person, who is not the owner or authorized user of a protected computer, to engage in unfair or deceptive acts or practices that involve accessing, hijacking, or otherwise using the modem, or Internet connection or service, for the computer and thereby causing damage to the computer or causing the owner or authorized user or a third party defrauded by such conduct to incur charges or other costs for a service that is not authorized by such owner or authorized user."

186.   Plaintiffs allege that Defendant Slate had cyber trespassed into Plaintiffs' personal and business email accounts on several occasions to send smear mails to Plaintiffs' clients. These acts of Defendant Slate have sabotaged Plaintiffs' credibility, reputation in their business circle and among the public.

187.   Plaintiffs allege that Defendant Slate had also hacked into their computer and had stolen important business information.

188.   As a direct and proximate cause of the reckless, wanton, intended, outrageous, and otherwise tortious acts

of Defendant Slate; Plaintiffs suffered and are still suffering from irreparable damage to their business, reputation and goodwill, loss of income, and mental disturbance.

189.   The direct and proximate result under prohibition of unfair or deceptive acts or practices relating to Spyware of the Securely Protect Yourself against Cyber Trespass Act has caused the Plaintiffs punitive, general and special damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs prayerfully request that this Honorable Court grant the following relief against Defendant Slate:

- Award compensatory damages as this Honorable Court deems just.
- Award judgment for Plaintiffs against Defendant Slate, jointly and severely;
- Award Defendant Slate with a statutory fine of $500,000.00;
- Award for temporary, preliminary, and permanent injunctive relief to prevent any future cyber trespass.
- Award for general damages, according to proof at trial;
- Award for exemplary and punitive damages, according to proof at trial;
- Award for all other damages permitted by law, according to proof at trial;
- Award for all other equitable relief permitted by law, according to proof at trial;

- Award for the cost of the suit.
- Award such other and further relief as this Honorable Court deems just.

## Count-XI
### Aiding and Abetting: Against Defendant Theresa ,Geoffrey, Jonathan and Tyler

190.   Plaintiffs repeat and allege from paragraph 1 to 102 with the same force and effect, as if fully set forth below.

191.   This cause of action is against Defendants Theresa and Geoffrey for aiding and abetting.

192.   Plaintiffs allege that Defendants Theresa and Geoffrey assisted Defendant Slate in several criminal activities intentionally, willfully and maliciously to cause Plaintiffs hardship, destroy their reputation, paint them in false light to the public and destroy their credibility as witnesses in the ABC case. In paragraph 67 Plaintiffs allege that Defendant Geoffrey aided Defendant Slate with registering the website www.diopKamau.com in his name.

193.   Defendants in spite of knowing that Defendant Slate indulged in dangerous cyber crimes they aided and abetted him in all such crimes.

194.   As a direct and proximate cause of the reckless, wanton, intended, outrageous, and otherwise tortious acts of Defendants Theresa and Geoffrey; Plaintiffs suffered and are still suffering from irreparable damage to their business, reputation and goodwill, loss of income, and mental disturbance.

195.   The direct and proximate result of aiding and abetting Defendant Slate with his criminal acts has caused the

Plaintiffs general and special damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs prayerfully request that this Honorable Court grant the following relief against Defendants Theresa and Geoffrey:

- Award compensatory damages as this Honorable Court deems just.
- Award judgment for Plaintiffs against Defendants Theresa ,Geoffrey, Jonathan and Tyler, jointly and severely;
- Award Defendants Theresa and Geoffrey with a statutory fine of $500,000.00;
- Award for general damages, according to proof at trial;
- Award for all other damages permitted by law, according to proof at trial;
- Award for all other equitable relief permitted by law, according to proof at trial;
- Award for the cost of the suit.
  Award such other and further relief as this Honorable Court deems just.

## Count-XII
### Intentional Infliction of Emotional Distress: Against Defendants Slate, Theresa, Geoffrey, Jonathan and Tyler

196.    Plaintiffs repeat and allege from paragraph 1 to 102 with the same force and effect, as if fully set forth below.

197.   This cause of action is brought by Plaintiffs against Defendants wholly for intentional infliction of emotional distress.

198.   Plaintiffs respectfully allege that the malicious acts of the Defendants wholly have caused the Plaintiffs severe emotional distress.

199.   Plaintiffs allege that the acts of Defendant Slate wherein he uploaded inappropriate photographs of Plaintiff Amina has left the Plaintiffs traumatized and their daughter Plaintiff Amina had to be treated for the mental and emotional disturbance caused to her.

200.   Plaintiffs allege that the malicious and intentional acts of Defendants have caused the Plaintiffs loss of mental peace because the Defendants have sabotaged Plaintiffs' reputation.

201.   As a direct and proximate cause of this cruel, malicious, reckless, wanton, intended, outrageous, and otherwise tortious act of Defendants wholly, Plaintiffs suffered and are still suffering irreparable damage done to their reputation and mental disturbance.

202.   The direct and proximate result of these offences against them has caused the Plaintiffs punitive, general and special damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs prayerfully request that this Honorable Court grant the following relief against Defendants wholly:

- Award compensatory damages as this Honorable Court deems just.
- Award judgment for Plaintiffs against Defendants wholly;

- Award Defendants statutory fine of $500,000.00;
- Award for general damages, according to proof at trial;
- Award for all other damages permitted by law, according to proof at trial;
- Award for all other equitable relief permitted by law, according to proof at trial;
- Award for the cost of the suit.
- Award such other and further relief as this Honorable Court deems just.

### Demand for Jury Trial

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted, this 12 day of October, 2011.

By: _____
        Diop Kamau, *pro se*
        9217 Hampton Glen Court
        Tallahassee, Florida 32312
        Phone- 310-773-9736

By: _____
        Tyra Ferrell, *pro se*
        9217 Hampton Glen Court
        Tallahassee, Florida 32312
        Phone- 310-773-9736

By: _____
Diop Kamau, pro se
(On behalf of Amina Kamau)
9217 Hampton Glen Court
Tallahassee, Florida 32312
Phone- 310-773-9736

## Certificate of Service

The undersigned hereby certifies that on this _12_ day of _Oct_, 2011 that a true and correct copy of the foregoing Complaint has been served to the Defendants by mail, via First Class mail, to the following addresses:

1. Gregory Alan Slate
   1708 Kilbourne PI,
   NW Washington DC 20010.

2. Theresa Boo Johnson
   1832 W. Fayette Street
   Baltimore, Maryland 21223

3. Geoffrey Johnson
   1832 W. Fayette Street
   Baltimore, Maryland 21223

4. Jonathan Johnson
   1832 W. Fayette Street
   Baltimore, Maryland 21223

5. Tyler Johnson
   1832 W. Fayette Street
   Baltimore, Maryland 21223

_____
Diop Kamau, *pro se*
9217 Hampton Glen Court
Tallahassee, Florida 32312
Phone- 310-773-9736

1
2
3
4

---

Tyra Ferrell, *pro se*
9217 Hampton Glen Court
Tallahassee, Florida 32312
Phone- 310-773-9736

5
6
7
8

---

Diop Kamau, pro se
(On behalf of Amina Kamau)
9217 Hampton Glen Court
Tallahassee, Florida 32312
Phone- 310-773-9736

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28