IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


DIOP KAMAU,
TYRA RASMUS (a.k.a. TYRA FERRELL),
and AMINA KAMAU,

      Plaintiffs,

vs.                                    Case No. 4:11cv522-RH/CAS

GREGORY ALAN SLATE,
THERESA BOO JOHNSON,
GEOFFREY JOHNSON,
JONATHAN JOHNSON,
and TYLER JOHNSON,

      Defendants.

_____/


## REPORT AND RECOMMENDATION

      Plaintiffs have filed a response, doc. 57, to the motion to dismiss, doc. 29.  The

motion to dismiss was deemed to have been filed only by Defendant Slate, *see* docs. 38

and 46, but the motion was subsequently adopted by the remaining four Defendants.

Docs. 29-42.

**Standard of Review**

      In reviewing a motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6) for failing

to state a claim upon which relief can be granted, the court must consider whether the

plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the

standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that

dismissal should not be ordered unless it appears beyond doubt that plaintiff could

prove "no set of facts" in support of his claims which would entitle him to relief).  The

pleading standard is not heightened, but flexible, in line with Rule 8's command to

simply give fair notice to the defendant of the plaintiff's claim and the grounds upon

which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d

1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

exceptions.").

> A complaint does not need detailed factual allegations to survive a motion to

dismiss, but it must provide the grounds for a plaintiff's entitlement to relief beyond mere

"labels and conclusions, and a formulaic recitation of the elements of a cause of action .

. . ."  Twombly, 127 S.Ct. at 1964-65.  Thus, for a complaint to survive a motion to

dismiss, it must contain either direct or inferential factual allegations concerning "all the

material elements necessary to sustain a recovery under some viable legal theory."

Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 684 (11th Cir. 2001) (citing

references omitted).

> If a pleading fails to specify the allegations in a manner that provides
> sufficient notice, a defendant can move for a more definite statement
> under Rule 12(e) before responding.  Moreover, claims lacking merit may
> be dealt with through summary judgment under Rule 56.

Swierkiewicz, 122 S.Ct. at 998-999.

> A court must accept the factual allegations of the complaint as true, Shotz v.

American Airlines, Inc., 420 F.3d 1332, 1334-35 (11th Cir. 2005), and dismissal is not

permissible because of "a judge's disbelief of a complaint's factual allegations."

Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct.

1827, 104 L.Ed.2d 338 (1989).  "*Pro se* pleadings are held to a less stringent standard

than pleadings drafted by attorneys and will, therefore, be liberally construed."

Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).  Nevertheless, a

complaint must provide sufficient notice of the claim and the grounds upon which it rests

so that a "largely groundless claim" does not proceed through discovery and "take up

the time of a number of other people . . . ."  Dura Pharmaceuticals, Inc. v. Broudo, 544

U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), *quoted in* Twombly, 127 S.Ct. at

1966.

Plaintiffs have alleged 12 claims against the Defendants, all of which are state

law claims.  Therefore, jurisdiction in this Court must necessarily be based on the

Court's diversity jurisdiction as provided for in 28 U.S.C. § 1332(a)(1).  Defendants raise

four primary reasons for dismissal, doc 29, some of which contain multiple subparts.

Each argument will be addressed, though not in the order presented.

**Subject matter jurisdiction**

Defendants contend this case should be dismissed for failure to meet the

$75,000 amount in controversy requirement.  Doc. 29 at 3-6.  A district court has

original jurisdiction over cases in which "the matter in controversy exceeds the sum or

value of $75,000, exclusive of interest and costs," and is between citizens of different

States.  28 U.S.C. § 1332(a).  In this case, the parties are of diverse citizenship, and the

only jurisdictional issue here is the amount in controversy.  Plaintiffs alleged in the

complaint that prior to the acts of Defendant Slate challenged here, Plaintiff earned

approximately $25,000.00 to $50,000.00 per year conducting law enforcement training. Doc. 1 at 20, ¶67.  Accepting that amount as true,[1] and accepting that Plaintiff Kamau lost important contracts due to interference with his business relationships, then it must be found that subject matter jurisdiction exists.  A plaintiff is permitted to aggregate claims against a defendant when calculating the jurisdictional minimum, regardless of relation to one another.  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 585, 125 S.Ct. 2611, 2635, 162 L.Ed.2d 502 (2005) (stating "This Court has long held that, in determining whether the amount-in-controversy requirement has been satisfied, a single plaintiff may aggregate two or more claims against a single defendant, even if the claims are unrelated."), citing Edwards v. Bates Cnty., 163 U.S. 269, 273, 16 S.Ct. 967, 41 L.Ed. 155 (1896); Nationwide Mut. Co. v. Ft. Myers Total Rehab Center, Inc.,  657 F.Supp.2d 1279, 1286 (M.D. Fla. 2009).  Plaintiffs have met the $75,000.00 jurisdictional minimum amount.

**Personal Jurisdiction**

Defendants contend this Court "has no personal jurisdiction over [D]efendants Geoffrey Johnson, Theresa Johnson, Jonathan Johnson and Tyler Johnson, and" the claims against them should be dismissed.  Doc. 29 at 6.  Defendants point out that "of the Complaint's 202 paragraphs, only four paragraphs contain any reference to alleged acts committed by defendants Geoffrey Johnson, Theresa Johnson, Jonathan Johnson, and Tyler Johnson."  Id.  In response, Plaintiffs contend that all of the Defendants committed tortuous acts of cyber defamation in Florida by use of the "World Wide Web."

---

[1] As noted above, Plaintiffs' facts must be accepted as true in ruling on a motion to dismiss.  Shotz v. American Airlines, Inc., 420 F.3d 1332, 1334-35 (11th Cir. 2005)

Doc. 57, at 7.  Plaintiffs asserted that by posting "write-ups, inappropriate photographs and videos of the Plaintiffs" and by emailing Plaintiffs' clients defamatory statements about the Plaintiffs, the Defendants committed tortuous acts of defamation in Florida and this Court "has personal jurisdiction over all the Defendants including Defendant Slate."  *Id.*

A two-step inquiry is used to determine "whether the exercise of personal jurisdiction of a non-resident defendant is proper."  Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295-96 (11th Cir. 2009), *citing* Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1166 (11th Cir. 2005).  The first step is to examine whether the exercise of jurisdiction is appropriate under Florida's long-arm statute,[2] and the second step considers "whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  Horizon Aggressive Growth, 421 F.3d at 1166, *citing* Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004), and *quoting* Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (noting that due process requires that if one is not present in the state, he must "have certain minimum" with the forum state that maintaining the lawsuit would not "offend traditional notions of fair play and substantial justice.") (quotation marks and citations omitted).  Because Florida law was unsettled on the issue of whether posting comments on a website out of the state of Florida would constitute electronic

---

[2] In a diversity case brought pursuant to the reach of the Florida long-arm statute, a question of Florida state law, "federal courts are required to construe it as would the Florida Supreme Court."  Oriental Imp. and Exp., Inc. v. Maduro & Curiel's Bank, 701 F.2d 889, 890-91 (11th Cir. 1983).

communications "into Florida," the Eleventh Circuit certified the question to the Florida

Supreme Court.  Internet Solutions Corp.,  557 F.3d at 1296.

The Florida Supreme Court answered that question in Internet Solutions Corp. v.

Marshall, 39 So.3d 1201, 1203 (Fla. 2010), holding that "posting defamatory material on

a website alone does not constitute the commission of a tortious act within Florida for

purposes of section 48.193(1)(b), Florida Statutes."  Internet Solutions Corp., 39 So.3d

at 1203.  "Rather, the material posted on the website about a Florida resident must not

only be accessible in Florida, but also be accessed in Florida in order to constitute the

commission of the tortious act of defamation within Florida under section 48.193(1)(b)."

Id.  Of particular relevance to this case is that to have personal jurisdiction over the

Defendants under Florida's long-arm statute, § 48.193(1)(b), it must be shown that

defamatory material posted on a website by a Defendant acting outside of the State of

Florida must have been accessed by persons inside Florida.  Because Plaintiffs are

located in Florida and indicate they accessed and viewed the allegedly defamatory

material, this Court will have personal jurisdiction over those Defendants who are

alleged to have committed tortious acts by use of a website or by sending electronic

communications into Florida.  See Internet Solutions Corp. v. Marshall, 557 F.3d 1293,

12 (11th Cir. 2009).

As noted in the motion to dismiss, review of the complaint reveals few specific

factual allegations showing the involvement of Defendants other than Defendant Slate.

There are, however, two brief mentions of "Defendants" in general, suggesting that all

Defendants were involved in the website.  Plaintiffs allege, "In the website, Defendants

uploaded defamatory content that abused Plaintiffs and which questioned their

credibility. . . .   Inappropriate photographs and videos of Plaintiff Ferrell and Plaintiff

Amina were posted on the website by the Defendants."  Doc. 1 at 14, ¶ 36.  Plaintiffs

also allege in the following paragraph, "By purchasing the domain name

www.diopKamau.com, the Defendants intended that when consumers search for

Plaintiff Kamau's professional services on the Internet . . . they would be directed to

Defendants' website . . . .   Once the consumers are on Defendants' website, they would

be subjected to the defamatory and libelous articles published by Defendants about

Plaintiffs."  *Id.* at ¶ 37.  Those paragraphs suggest involvement by all Defendants, but

fail to provide specific factual allegations which provide Defendants with notice as to

what each Defendant is alleged to have done.

The only specific allegations to particular Defendants besides Gregory Slate is

that in August of 2008, an attorney for Plaintiffs sent a letter to Defendant Geoffrey

Johnson requesting him to "remove scandalous videos" that Defendant Geoffrey

Johnson posted on Youtube.  Doc. 1 at 15, ¶ 42 (citing to Plaintiff's exhibit 9).  The letter

is from an attorney in the State of Florida, contacted by Plaintiffs who are in Florida.

Considering Plaintiffs are pro se, that exhibit is sufficient to demonstrate the internet

material was accessed by persons inside Florida and is sufficient to demonstrate

involvement by Defendant Geoffrey Johnson.  There is also an additional allegation that

Geoffrey Johnson sent "a smear e-mail" about Plaintiff Kamau to one of his clients.

Doc. 1 at 20-21, ¶ 69.  The email, attached as Plaintiff's exhibit 18, reveals it originated

from Geoffrey Johnson, who was outside the State of Florida.  While it is unclear that

the recipient of that particular emails was inside Florida, it is additional evidence of

Defendant Geoffrey Johnson's involvement.

Plaintiffs have also shown a connection with the State of Florida and Defendant Jonathan Johnson.  Plaintiffs alleged that "Defendant Jonathan [Johnson] through the website www.GoDaddy.com agreed to the demands of Plaintiff Kamau to have the website www.diopKamau.com removed."  Doc. 1 at 21, ¶ 69, *citing* to exhibit 19.  While that allegation by itself does not show an unlawful act by Jonathan Johnson, considering it along with the supporting exhibit, reveals that Defendant Jonathan Johnson was notified by email about a claim of copyright infringement on "your site" and Jonathan Johnson responded by acknowledging that the website was his site, and stating that the material was removed or disabled.  Plaintiff's exhibit 19.  Construed liberally as must be done with pro se plaintiffs, the exhibit and allegations reveal that Jonathan Johnson was involved with the website, there was alleged defamatory material on that website, and is sufficient to find that personal jurisdiction exists as to Defendant Jonathan Johnson as well.

The only specific allegation against Theresa Johnson is that she and Defendant Slate "filed an insurance claim against" Greg Miller, a private investigator hired by Plaintiffs and who Slate claimed "attacked him."  Doc. 1 at 19, ¶ 59.  That is unrelated to Plaintiffs and has no connection with the State of Florida.  There is one additional allegation that Theresa Johnson contacted persons at certain Florida Sheriff's offices in an attempt to obtain email addresses so that more "smear e-mails" could be sent.  Doc. 1 at 21, ¶ 70.  Theresa Johnson "also contacted the Tallahassee Democrat newspaper and other South Florida papers leaking[3] disparaging stories about the Plaintiffs."  *Id.*

---

[3] To the degree Defendants contend they are "unsure on what basis Plaintiffs are alleging that defendant Theresa Johnson 'leaked' the stories," *see* doc. 29 at 7, Defendants' remedy is a motion for a more definitive statement.  For purposes of

Having reached into Florida for purposes of having newspapers publish "disparaging stories" about Plaintiff, knowing or intending to cause harm to Plaintiff in his home state is sufficient contact to find personal jurisdiction exists over Defendant Theresa Johnson. *See* Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984) (finding personal jurisdiction existed over a Florida resident for a libelous story concerning a California resident).

However, claims against the remaining Defendant, Tyler Johnson, are insufficient.  Plaintiffs alleged only that Slate "with the help of Defendants Jonathan and Tyler produced fraudulent testimony and evidence."  Doc. 1 at 17, ¶ 52; *see also* ¶ 53. Such "evidence" was in support of a motion for a restraining order in a court in the District of Columbia and has no connection with the website or electronic communications or the state of Florida.  There is no other specific mention of Tyler Johnson and, thus, there is insufficient connection with Defendant Tyler Johnson and Florida to have personal jurisdiction over him and the motion to dismiss should be granted as to Tyler Johnson only.

Having concluded that the exercise of jurisdiction is appropriate for four of the five named Defendants under Florida's long-arm statute, it is also concluded that exercising personal jurisdiction over those Defendants would not violate the Due Process Clause.  To comport with Due Process, individuals must "have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal citations omitted).  "This is because a defendant who has 'purposefully directed his activities at residents in the forum,' such that 'the litigation results from alleged

establishing personal jurisdiction, it is sufficient.

injuries that arise out of or relate to those activities,' can expect to be liable to suit in that forum."  Turner v. Regions Bank, 770 F.Supp.2d 1244, 1248 (M.D. Ala. 2011), *quoting* Burger King Corp., 471 U.S. at 472, 105 S.Ct. 2174 (internal citations omitted).

Accepting the allegations as true, that four of the named Defendants were involved in postings on various websites aimed at harming the reputations of Florida residents, and were involved in sending electronic communications with a similar purpose, it should come as no surprise that litigation would arise in the state of Florida where the targets of those actions reside.

**Count I - Defamation and Libel per se**

Plaintiffs bring Count I against Defendants Slate and Theresa Johnson for their "false and defamatory campaign" intended to harm Plaintiffs.   Doc. 1 at 28-32.  The basis for this claim is the creation and posting of false statements on the internet, defamatory statements sent in e-mail, and "leaking" a story to newspapers.  Doc. 1 at 29-30.  Defendants contend Count I should be dismissed because it is barred by the statute of limitations and because it fails to state a claim as to Defendant T. Johnson. Doc. 29 at 7-8.  Plaintiffs contend in response that they "have been helpless since 2007 and could not file a lawsuit within the statute of limitations . . . because Defendant Slate continuously attacked the Plaintiffs by filing false cases against Plaintiffs in different court rooms in the district court of the District of Columbia."  Doc. 57 at 8-9.

Pursuant to Florida law, the statute of limitations for an action for libel or slander is two years.  Fla. Stat. § 95.11(4)(g) (2009).  The limitations period begins to run when the cause of action accrues.  Florida law defines that period as: "The cause of action for damages founded upon a single publication or exhibition or utterance, as described in

§ 770.05,[4] shall be deemed to have accrued at the time of the first publication or

exhibition or utterance thereof in this state."  FLA. STAT. § 770.07 (2011).  The Florida

Supreme Court held in Wagner v. Flanagan, 629 So.2d 113, 114-15 (Fla. 1994), that

the time of accrual is controlled by the plain language of the statute and, thus, begins to

run at the time of publication rather than at the discovery of defamatory statements.

This Court must apply that law to this proceeding as well.

     This action was filed on October 12, 2011, and therefore, all claims based on

events which occurred prior to October 12, 2009, are barred.  Many of Plaintiffs' factual

assertions do not contain dates and it is unknown which of the events alleged in the

complaint occurred prior to that date.  It is clear, however, that Plaintiffs claim based on

these specific events are barred: July 2008 website (Plaintiff's ex. 7); July 3, 2008,

"smear email attack" by Defendant Slate (doc. 1 at 15); 2008 posting of Youtube videos

(doc. 1 at 15); August 2009 emails by Defendant Slate (doc. 1 at 16); August 2009

stories on the website (doc. 1 at 16); August 2009 comments on "New Times" blogging

site (doc. 1 at 17); smear email dated July 2, 2008 (doc. 1 at 20, Plaintiff's ex. 18).

Plaintiffs alleged that the websites using Plaintiff Kamau's name were created and

operating in 2008.  Doc. 1 at ¶ 35.  While they allege defamatory content was posted,

see ¶ 36, it is not known when all of the allegedly defamatory content was posted.  If

there is a factual basis for Plaintiffs to allege that defamatory content was posted on a

---

     [4] That statute provides: "No person shall have more than one choice of venue for
damages for libel or slander, invasion of privacy, or any other tort founded upon any
single publication, exhibition, or utterance, such as any one edition of a newspaper,
book, or magazine, any one presentation to an audience, any one broadcast over radio
or television, or any one exhibition of a motion picture. Recovery in any action shall
include all damages for any such tort suffered by the plaintiff in all jurisdictions." FLA.
STAT. § 770.05 (2011).

website any time after October 12, 2009, or if they can show that defamatory emails were sent after that date, then these claims could be pursued.  The motion to dismiss should be granted as to Count I, but Plaintiffs[5] should be provided leave to submit an amended complaint if there is a basis to do so.

In addition, Defendants seek dismissal of Count I against Defendant Theresa Johnson because the complaint fails to allege what defamatory or libelous statements were made by her and because Plaintiffs may "have a cause of action against the newspapers" who published the stories but not against Defendant Theresa Johnson. Doc. 29 at 7.  Defendant's second argument is incorrect.  "Florida courts have held that '[E]very one who takes part in the publication ... is charged with publication.' "  Doe v. Am. Online, Inc., 783 So.2d 1010, 1017 (Fla. 2001), quoted in Geller v. von Hagens, 2011 WL 2580337, at *3 (M.D. Fla. 2011) (concluding that "when the Defendants allegedly made the defamatory statements to ABC journalists, they took part in the ultimate publication of the ABC broadcast and are therefore charged with that publication.").  As for the first argument, Plaintiffs alleged that this Defendant "contacted the Tallahassee Democrat newspaper and other South Florida papers leaking disparaging stories about the Plaintiffs."  Doc. 1 at 21, ¶ 70.  That assertion is insufficient to state a claim against this Defendant because it fails to identify a false statement.  If statements were disparaging but true, Plaintiffs cannot bring a claim for defamation.  "[A] false statement of fact, has been called the '*sine qua non* for recovery

---

[5] Plaintiffs' assertions that they were unable to proceed with this case earlier because of Slate's continued attacks on them is rejected.  Equitable tolling is not available in civil actions in Florida except in limited circumstances as specified in § 95.051(1).  FLA. STAT. § 95.051(2).  This Court must follow Florida law on this point. McMahan v. Toto, 311 F.3d 1077, 1080 (11th Cir. 2002).

in a defamation action."  Johnson v. Clark, 484 F.Supp.2d 1242, 1247 (M.D. Fla. 2007),

quoting Byrd v. Hustler Magazine, Inc., 433 So.2d 593, 595 (Fla. 4th DCA 1983); see

also Thomas v. Jacksonville Television, Inc., 699 So.2d 800, 803 (Fla. 1st DCA 1997)

(noting one element of a defamation claim is "a false and defamatory statement

concerning another).  The motion to dismiss should be granted as to Defendant

Theresa Johnson in Count I, but Plaintiffs should be provided leave to submit an

amended complaint if there is a basis for this claim and it is not time barred.

Furthermore, as will be explained in greater detail below, Plaintiffs must confine count I

to a single claim of either defamation or libel.

**Count II**

Defendants seeks dismissal of this claim because "Florida law does not

recognize the common law tort of false light invasion of privacy."  Doc. 29 at 9.  For

many years, Florida had recognized a claim for "false light in the public eye" as a

category of an invasion of privacy claim, see Allstate Ins. Co. v. Ginsberg, 863 So.2d

156, 162 (Fla. 2003) (explaining the claim as the "publication of facts which place a

person in a false light even though the facts themselves may not be defamatory.")

However, the Florida Supreme Court has more recently held that it no longer recognizes

false light as a viable cause of action.  Jews for Jesus, Inc. v. Rapp, 997 So.2d 1098,

1114 (Fla. 2008) (noting that claims for false light appear to have been brought, in part

at least, to circumvent the short two-year statute of limitations period for the duplicitous

claim of defamation).  Because the claim asserted in Count II is no longer recognized as

a viable cause of action in the State of Florida, the motion to dismiss Count II should be

granted.

**Count III**

Count III is titled by Plaintiffs as "Injurious Falsehood - Trade Libel."  Doc. 1 at

34.  Plaintiffs allege "Defendants made false statements about the Plaintiffs business

and disparaged the nature and manner by which Plaintiff Kamau conducts business."

*Id.*  Further, Plaintiffs base this claim on their allegations that Defendant "published

untrue statements to third parties through posting statements over the worldwide

internet."  *Id.*  It is also based on the allegation the "Defendants sent smear and

defamatory emails."  *Id.*  Defendants urge this claim should be dismissed because it is

barred by the statute of limitations.  *Id.* at 7-8.

While Defendants are correct that the statute of limitations would bar a claim for

libel or slander that accrued more than two years prior, another reason exists to dismiss

this claim in its entirety.  *See* Callaway Land & Cattle Co., Inc. v. Banyon Lakes C.

Corp., 831 So.2d 204, 209 (Fla. 4th DCA 2002).  The state of Florida provides for a

"single publication/single action rule," which means a single publication may give rise to

a single cause of action.  Callaway Land, 831 So.2d at 208, *citing* Orlando Sports

Stadium, Inc. v. Sentinel Star Co., 316 So.2d 607, 609 (Fla. 4th DCA 1975).  This rule

prohibits multiple actions which arise from the same alleged wrong.  Callaway Land, 831

So.2d at 208.  "The rule is designed to prevent plaintiffs from circumventing a valid

defense to defamation by recasting essentially the same facts into several causes of

action all meant to compensate for the same harm."  Messenger v. Gruner + Jahr USA

Publ'g, 994 F.Supp. 525, 531 (S.D.N.Y. 1998), vacated on other grounds by, 208 F.3d

122 (2d Cir. 2000), *quoted in* Callaway Land, 831 So.2d at 208; *see also* Trujillo v.

Banco Central Del Ecuador, 17 F.Supp.2d 1334, 1339 (S.D. Fla. 1998) (holding that

false light privacy claim was barred by single publication/single action rule where it was based on the same facts giving rise to the claim for defamation).  The rule also prevents circumventing the short two-year statute of limitations by re-describing a slander action to fit a different category of intentional wrong.  Callaway Land, 831 So.2d at 208; *see also* Orlando Sports Stadium, Inc. v. Sentinel Star Co., 316 So.2d 607, 609 (Fla. 4th DCA 1975) (finding that plaintiff's claim for malicious interference with business could not proceed as a separate claim from libel pursuant to the single cause of action rule); Ovadia v. Bloom, 756 So.2d 137, 141 (Fla. 3d DCA 2000) (affirming "that the single publication/single action rule does not permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based."); Fridovich v. Fridovich, 598 So.2d 65, 70 (Fla. 1992) (holding "that the successful invocation of a defamation privilege will preclude a cause of action for intentional infliction of emotional distress if the sole basis for the latter cause of action is the defamatory publication" but noting that the "privilege will not prevent recovery upon separate causes of action which are properly pled upon the existence of independent facts.").  Here, Plaintiffs may not proceed on multiple claims for the same challenged defamatory actions.  The claim for defamation cannot be re-characterized in additional, separate counts for libel, slander, or the intentional infliction of emotional distress if the claim arises from the same publication.

As was true for count I, this claim should be dismissed but Plaintiffs should be provided with an opportunity to submit an amended complaint.  Plaintiffs may not duplicate claims for libel and defamation where the basis for that claim is the same publication or event.  However, to the degree Plaintiffs may present separate claims

based on separate publications which fall within the two-year statute of limitations, they could proceed.  Primerica Fin. Servs., Inc. v. Mitchell, 48 F.Supp.2d 1363, 1368 (S.D. Fla. 1999) (permitting a tortious interference claim to proceed and noting that although plaintiffs "appear to be relying in large part upon allegedly untruthful statements in support of their tortious interference claim, they have also pled the other circumstances and facts necessary in support of a claim for tortious interference.").

**Count IV**

Count IV is titled by Plaintiffs as "Interference with Business, Professional [R]eputation and Goodwill" and is against Defendants Slate and Theresa and Geoffrey Johnson.  Doc. 1 at 35.  Defendants correctly contend the claim must be dismissed because it is based solely on allegedly defamatory statements.  Plaintiffs do not appear to base this claim on facts separate and apart from the allegations of defamation.  Therefore this claim should be dismissed pursuant to Florida's single action rule.

**Count V**

Plaintiffs assert a claim against Defendant Slate only for "Cyber Harassment and Cyber Stalking" pursuant to FLA. STAT. § 784.048.[6]  Doc. 1 at 38.  Plaintiffs contend Defendant Slate "hacked into Plaintiffs' email account" and improperly accessed Webex "pretending to be [a] volunteer to obtain information about Plaintiffs' business activities." Id. at 39.  Plaintiffs also claim Defendant Slate committed the act of cyber stalking against the minor child, Plaintiff Amina.  Id.  Defendant Slate correctly notes that § 748.048 is a criminal statute and does not contain any provisions for a civil cause of

---

[6] The statute defines the offense of "cyberstalk" and provides the penalties for the offense.  FLA. STAT. § 748.048 (2011).  There are no listed civil remedies.

action.  Doc. 29 at 10. While some criminal acts may also provide the basis for a civil cause of action, *see* FLA. STAT. § 772.104 or § 772.11, this is not one of those acts. Defendants' motion to dismiss Count V should be granted as Plaintiffs may not base this civil action on the violation of § 748.048.

In response to the motion to dismiss, Plaintiffs assert that there is a provision for filing a petition for an injunction.  Doc. 57 at 12.  While Plaintiffs note that there is not a specific provision for an injunction in the case of cyber stalking, Plaintiffs suggest that a petition may be pursued through such remedies as are provided for in cases of domestic violence, sexual violence, or repeat violence and the like.  *Id.*  Presumably, Plaintiffs are referring to FLA. STAT. § 784.046 which creates "a cause of action for an injunction for protection in" certain specified cases.  If Plaintiffs were entitled to such a petition, and it is not clear that they are, Plaintiffs avenue of recourse would be as stated in that statute and they would have "standing in the circuit court to file a sworn petition . .. . ."  FLA. STAT. § 784.046(2)(a)-(c).  Because Plaintiffs may not base this civil action on allegations that Defendants violated a state criminal law, Count V must be dismissed.

**Count VI**

Plaintiffs assert a claim against Defendant Slate only for "Video Voyeurism" pursuant to FLA. STAT. § 810.145(3).  Defendant argues that Plaintiffs fail to allege a violation of the statute and that there is no provision for a civil cause of action for the crime of video voyeurism.  Doc. 29 at 10-11.  Florida law prescribes the penalties for violation of this criminal statute, but there is no provision providing for a civil cause of action.  The motion to dismiss Count VI should be granted.

**Count VII**

Plaintiffs assert a claim against Defendant Slate only for "Theft" and cite to FLA. STAT. § 812.014.  Doc. 1 at 42-44.  Defendant contends that "civil theft" is defined in FLA. STAT. § 772.11, and under that statute, a "person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section."  Doc. 29 at 11.  Defendant argues that because Plaintiffs have not made a written demand, "they cannot bring a suit under this statute."  *Id.*

The Florida statute upon which Plaintiffs bring this claim is § 812.014.  That statute defines "Theft," specifies varying degrees of theft, and prescribes the criminal penalties.  According to Plaintiffs' allegations in the complaint, Defendant Slate wrongfully appropriated information from Elite Web and "stole email addresses" and other customer information, he hacked into Webex to fraudulently obtain additional information about Plaintiffs' business activities, and on May 14, 2008, Slate "burglarized Plaintiffs' home and . . . stole business records, a substantial amount of copyrighted film materials and" eventually wrongfully used some of the material.  Doc. 1.  Such activity would appear to come within the terms of § 812.014.

In the case of theft, FLA. STAT. § 812.035 permits "[a]ny aggrieved person" to initiate a proceeding for the violation of § 810.014.  Such a proceeding must be initiated "within 5 years after the cause of action accrues," although the "period of limitation does not run during any time when the defendant is continuously absent from the state . . . ."  FLA. STAT. § 812.035(6),(10).  Because a civil provision exists for the crime of theft, the motion to dismiss should be denied as to Count VII.

**Count VIII**

Plaintiffs assert a claim against Defendant Slate only for "Repeat Violence" pursuant to Fla. Stat. § 784.046(1)(b).  Doc. 1 at 44-46.  Defendant contends that Plaintiffs' claim fails because the statute "requires that defendants have committed an act of stalking within 6 months of the filing date" and the complaint fails to make that allegation.  Doc. 29 at 11.  Defendant also argues that this claim is barred by the statute of limitations and even if it were not barred, the statute only provides for an injunction, not a civil action for monetary damages.  *Id.* at 12.

Defendant is correct that "Repeat Violence" is defined as "two incidents of violence or stalking committed by the respondent, one of which must have been within 6 months of the filing of the petition . . . ."  Fla. Stat. § 784.046(1)(b).  The complaint fails to contain any allegations of violence or stalking within 6 months of the date the complaint was filed.  Because the complaint fails to state a claim for repeat violence, the motion to dismiss this count should be granted.[7]

**Count IX**

Plaintiffs assert a claim against Defendant Slate for "threats," citing Fla. Stat. § 836.05.  Doc. 1 at 47.  As correctly noted by Defendants, § 836.05 is a criminal statute and "no violation of the statute gives rise to a civil cause of action."  Bass v. Morgan, Lewis & Bockius, 516 So.2d 1011, 1011 (Fla. 3d DCA 1987); Doc. 29 at 12.   In response, Plaintiffs contend that Fla. Stat. § 874.06(1) provides for a civil cause of action for treble damages, an injunction, or other appropriate relief.  Doc. 57 at 15.  Because that provision only applies to violations of chapter 874 and not to § 836.05, a

---

[7] No ruling is intended as to the propriety of a civil claim for the violation of this criminal statute.  In light of the fact that Plaintiffs have not shown that Defendant Slate committed "repeat violence," there is no need to reach that question.

Case 4:11-cv-00522-RH-CAS   Document 61   Filed 10/01/12   Page 20 of 22

provision under chapter 836, it is inapplicable.  The motion to dismiss should be granted as to count IX.

## Count X

Plaintiffs assert a claim against Defendant Slate for "unfair or deceptive acts or practices relating to spyware of securely protect yourself against cyber trespass act, 2008."  Doc. 1 at 49.  Plaintiffs state this cause of action is brought pursuant to § 2 and § 3 of the "Securely Protect Yourself Against Cyber Trespass Act, 2008."  *Id.*  Defendant Slate contends Plaintiffs refer "to a bill, H.R. 964, which never became law, and therefore defendants could not have violated it."  Doc. 29 at 12.  The Act referenced by the parties is federal legislation that was introduced in February 2007.  "H.R. 964, the Securely Protect Yourself Against Cyber Trespass Act, or SPY ACT," was passed by the House on June 6, 2007, and received in the Senate on June 7, 2007.  It was referred to the Committee on Commerce, Science, and Transportation, but no further action was taken on H.R. 964 in the 110th Congress, and it still has not been adopted.  Therefore, because this legislation has not yet been enacted, Plaintiffs fail to state a claim and the motion to dismiss Count X should be granted.

## Count XI

Plaintiffs bring this claim against all four of the Johnson Defendants for "aiding and abetting" Defendant Slate.  Doc. 1 at 51.  A claim for aiding and abetting is, again, based on criminal law.  *See* FLA. STAT. § 777.011.  Plaintiffs point to no legal basis for a private right of action to bring a civil claim for aiding and abetting another in the commission of criminal activities.  Therefore, the motion to dismiss this claim should be granted as the complaint fails to state a claim upon which relief may be granted.

**Count XII**

In the final claim, Plaintiffs seek to bring a claim against all named Defendants for the intentional infliction of emotional distress.  Doc. 1 at 52-53.  Defendants contend Plaintiffs fails to state a claim because they allege only "[m]ere tortious acts" and present only "a formulaic recitation of the elements of a cause of action" that is insufficient.  Doc. 29 at 13-14.  Accepting Plaintiffs' allegations as true, the conduct as alleged is outrageous, extreme in degree and the length of time Plaintiffs and Defendants have been at odds with each other.  Yet, this claim cannot proceed because of Florida's "single action" rule.  Callaway Land, 831 So.2d at 208, *citing to* Fridovich v. Fridovich, 598 So.2d 65, 70 (Fla. 1992) (successful invocation of a defamation privilege precludes a cause of action for intentional infliction of emotional distress if sole basis for latter is publication).  In Fridovich, the Florida Supreme Court found that "a plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as 'outrageous.' " 598 So.2d at 70.  What is not clear from the complaint is whether or not Plaintiffs' sole basis for this claim are the same facts which support the defamation claim.  Therefore, the motion to dismiss this claim should be granted, but Plaintiffs should be granted leave to amend this claim.

Finally, the motion to dismiss asserts that the case should be dismissed for bad faith litigation.  Doc. 29 at 14-15.  Thus far in this case, issues have arisen on both sides of the case and both parties accuse the other of malicious and bad faith conduct.  Such issues may be dealt with as provided for in Rule 11, but on this record, and at this time, this case should not be dismissed for this reason.  After consideration of this motion to

dismiss and this report and recommendation, the Order to Show Cause, doc. 48, and the parties' responses will be considered in due course.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that the complaint by **DISMISSED** as to Defendant Tyler Johnson for lack of personal jurisdiction, that the motion to dismiss (doc. 29) Counts I, III, and XII, be **GRANTED** but Plaintiffs should be provided leave to submit an amended complaint if there is a basis to do so, that the motion to dismiss (doc. 29) be **GRANTED** as to Counts II, IV-VI, VIII-XI, but be **DENIED** as to count VII. It is further **RECOMMENDED** that this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on October 1, 2012.


 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**